## UNITED STATES DISTRICT COURT
### DISTRICT OF RHODE ISLAND

FILED

2014 FEB 10  A 10: 58

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CERTAIN UNDERWRITERS AT ) LLOYD'S, LONDON, SUBSCRIBING TO ) POLICY NUMBER LPK 02377 ) <br> Plaintiffs, ) <br> ) <br> Vs. ) <br> ) <br> 825 MAIN STREET, LLC ) <br> Defendant. ) | DOCKET NUMBER <br> CA 14 - 76 MK |

### COMPLAINT FOR DECLARATORY RELIEF
### AND CLAIM FOR JURY TRIAL

#### NATURE OF ACTION

1.      This Complaint is a request for a judgment declaring that an insurance policy that

certain Underwriters at Lloyd's, London subscribing to Policy No. LPK 02377 ("Underwriters")

issued to the 825 Main Street, LLC ("825 Main") does not require Underwriters to pay for any loss,

damages, costs or expenses which 825 Main has or may incur by reason of water damage and/or

structural damage to a building located at 825 Main Street, West Warwick, Rhode Island, alleged to

have occurred on or about September 16, 2011.

#### JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter under 28 U.S.C. sec. 1332 in that it arises

between citizens of different states / countries and the matter in controversy exceeds the sum or

value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

3.      Venue is proper in this district under 28 U.S.C. sec. 1391(a)(2) and (b)(2) as this action concerns an insurance policy issued to 825 Main for a dwelling located in West Warwick, Rhode Island.

## PARTIES

4.      Underwriters are those individuals subscribing to a policy of insurance, no. LPK 02377 issued by certain Underwriters at Lloyd's, London to 825 Main Street Realty, LLC, effective January 28, 2011 through January 28, 2012.

5.      825 Main is a Rhode Island limited liability company with a principal place of business at 18 Imperial Place, Suite 1G, Providence, RI.

## BACKGROUND

6.      Upon information and belief, at all relevant times 825 Main owned property located at 825 Main Street, West Warwick, Rhode Island, once operated as a mill complex including a two-story frame building known as the dye house (collectively referred to as "the mill" and the specific building as "the dye house").

7.      Upon information and belief, 825 Main makes claims for losses relating to the failure of a portion of the mill's fire suppression system causing water damage on or about on September 16, 2011. 825 Main claims that the mill's walls, fl oors, and electrical and mechanical systems were severely damaged and that the water damage caused a portion of the first floor facility to collapse onto the lower level. 825 Main's claim seeks demolition / repair / restoration costs.

8.      825 Main also alleges to have sustained loss of income due to the inability to repair and rent the premises.

9.      825 Main's claim also seeks coverage for "Defaulted credit facility" and expenses allegedly incurred by 825 Main's principal, John Ponte ("Ponte"), to resolve and dispose of a bank's

action against Ponte relative to a personal guaranty connected to certain secured indebtedness obtained for the purchase of the property at 825 Main Street.

10.     On October 19, 2011, the West Warwick Building Department ("Building Department") sent a cease and desist letter to 825 Main ordering that all operations at the premises be stopped.  As reason, the Building Department determined that:

> There is massive deterioration of the wood components (flooring, beams and posts) throughout the entire building.  Additionally the reinforced concrete slab has spalled in many areas leaving the steel reinforcement exposed and rusting. The joists, which support the original first floor wood floor, are also badly deteriorated/failed as is the steel "C" channel. Also a portion of the floor collapsed in an area approximately 15' x 80' on the northwest end of the building.

A true and correct copy of the Building Department letter is attached hereto as Exhibit "A."

11.     The plaintiffs initially investigated the cause and origin of the loss.  This included retaining an independent adjuster who visited the property, took photographs, obtained documents from local authorities, spoke with witnesses, retained experts (Victor Popp, PE, a sprinkler expert, Michael P. Hickey, Jr., an electrical expert, and Douglas Fisher, PE, a structural engineer), and reviewed the findings of Ponte's expert, Richard Pastore, P.E., and the West Warwick Building Department.

12.     Following the initial investigation, the parties reached a settlement relative to 825 Main's claims for property damage.  In February of 2012, a proof of loss was sent based on the agreed to amount of the claim.

13.     Ponte later disagreed with the settlement amount and would not accept payment.

14.     On July 25, 2012, Underwriters' independent adjuster sent correspondence to Ponte indicating that Underwriters were aware that 825 Main would no longer accept the previously

agreed to settlement amount, and noting that 825 Main would need to specify the amount of its claim and designate an appraiser if it wanted to proceed with an appraisal..

15. It was not until January 2013, after several follow up inquiries on behalf of the plaintiffs that noted the process for appraisal, that a letter on behalf of 825 Main asserted vastly expanded claims, for the first time including a continuing loss of income claim. No documents supporting the new / expanded claims were provided.

16. Underwriters then retained counsel and, in March 2013, requests for supporting documents were made, subject to a full reservation of rights.

17. After no documents were forwarded, counsel noticed Ponte's examination under oath for April 30, 2013, with another request that supporting documents be provided.

18. The examination under oath was rescheduled based on the April 29, 2013 request of 825 Main's counsel.

19. On May 20, 2013, having still received no supporting documents and unsuccessfully attempting to schedule a site visit, counsel re-noticed Ponte's examination under oath for June 24, 2013, with another request that supporting documents be provided.

20. The June 24, 2013, examination under oath commenced, but was suspended when it became clear that many of the requested documents were not produced and 825 Main was not in a position to clarify the nature of its claims. The continued examination under oath was noticed for August 13, 2013.

21. In an effort to have documents available prior to the August 2013 examination under oath, counsel for Underwriters met with counsel for 825 Main Street on July 29, 2013. It was learned at this meeting that the amounts originally claimed were no longer valid and new categories

of claims were to be asserted, including losses allegedly related to defaulted loan obligations. Additional documents were promised.

22.     The day before the August 13, 2013 examination under oath was to take place, 463 additional documents were produced without explanation or clarification of 825 Main's claims. Counsel for Underwriters canceled the examination under oath and requested an explanation with supporting documentation for each aspect of 825 Main's expanding and changing claims.

23.     Having received no response, on September 4, 2013, counsel again noticed Ponte's continued examination under oath for October 3, 2013, with a request for all documents to be produced by September 25, 2013.  The notice cited to the Policy's cooperation requirements and that Underwriters were reserving their rights, similar to the prior notices and requests for documents.

24.     825 Main failed to timely comply with the requested pre-examination production of documents, prompting counsel for Underwriters to again cancel Ponte's continued examination.

25.     On October 24, 2013, 825 Main provided correspondence asserting that its claims involved loss of rental income, demolition/repair/ restoration costs and expenses, and "defaulted credit facility" losses, substantially greater than previously presented.

26.     On November 14, 2013, 825 Main indicated that the claim should again be significantly increased, including a claim for more than $550,000 to resolve and dispose of a bank's action to collect on a personal guaranty Conte provided relative to a loan associated with the purchase of the mill.  No documents were provided in support of this claim.

27.     As detailed, Underwriters' investigation efforts were repeatedly met with untimely, incomplete and/or unclear presentation of 825 Main's claims.

28.     A denial of coverage letter dated December 6, 2013, was sent to Ponte, care of his

counsel at the time.  A true and correct copy of the Denial letter is attached hereto as Exhibit "B."

29.     New counsel for Ponte retained by 825 Main responded to that denial letter and

selected an appraiser by letter dated January 27, 2014.  A true and correct copy of that response

letter is attached hereto as Exhibit "C."


## THE POLICY

30.     Underwriters issued Certificate number LPK 02377 to 825 Main, effective January

28, 2011, through January 28, 2012, which lists the described locations as five (5) buildings at 825

Main Street, West Warwick, Rhode Island, including two warehouses, a two-family dwelling, and a

manufacturing building. ("the Policy").  A true and correct copy of the Policy is attached hereto as

Exhibit "D."

31.     The following provisions appear in the Policy in form ***BUILDING AND***

***PERSONAL PROPERTY COVERAGE FORM*** *(CP 00 10 06 07):*

*A.      Coverage*

*We will pay for direct physical loss or damage to Covered Property at the premises
described in the Declarations caused by or resulting from any Covered Cause of Loss.*

*1. Covered Property*
*Covered Property, as used in this Coverage Part, means the type of property
described in this section, **A.1.**, and limited in **A.2.**, Property Not Covered, if a
Limit of Insurance is  shown in the Declarations for that type of property.*
*a. **Building,** meaning the building or structure described in the
Declarations, including:*
*(1) Completed additions;*
*(2) Fixtures, including outdoor fixtures;*
*(3) Permanently installed:*
*(a) Machinery and (b) Equipment;*
. . .

*b. Your Business Personal Property* located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property – Separation Of Coverage form:
*(1) Furniture and fixtures;*
*(2) Machinery and equipment;*

. . .

**2. Property Not Covered**
*Covered Property does not include:*
*a. Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;*

. . .

**3. Covered Causes Of Loss**
*See applicable Causes Of Loss Form as shown in the Declarations.*

**4. Additional Coverages**
   **a. Debris Removal**
   *(1) Subject to Paragraphs (3) and (4), we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.*

   . . .

32.    The following provisions appear in the Policy in form *CAUSES OF LOSS –*

*SPECIAL FORM (CP 10 30 06 07):*

**A.    Covered Causes of Loss**
*When Special is shown in the Declarations, Covered Causes of Loss means Risks of Direct Physical Loss unless the loss is:*
*1. Excluded in Section B., Exclusions; or*
*2. Limited in Section C., Limitations;*
*that follow.*

**B.    Exclusions**
*1.      We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.*

. . .

**a.  Ordinance Or Law**
*The enforcement of any ordinance or law:*
*(1)  Regulating the construction, use or repair of any property; or*

*(2) Requiring the tearing down of any property, including the cost of removing its debris.*

*This exclusion, Ordinance Or Law, applies whether the loss results from:*

*. . .*

*(b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris following a physical loss to that property.*

*. . .*

*2.        We will not pay for loss or damage caused by or resulting from any of the following:*

*. . .*

***d.*** *(1) Wear and tear;*
*(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property  that causes it to damage or destroy itself;*

*. . .*

*But if an excluded cause of loss that is listed in 2.d.(1) through (7) results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.*

*. . .*

***f.*** *Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.*

*. . .*

***k.*** *Collapse, including any of the following conditions of property or any part of the property:*
*(1) An abrupt falling down or caving in;*
*(2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or*
*(3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition related to (1) or (2) above.*
*But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.*

*This exclusion k. does not apply:*
*(a) To the extent that coverage is provide under the Additional Coverage – Collapse; or*
*(b) To collapse caused by one or more of the following:*
*(i) The "specified causes of loss";*

*. . .*

***m.*** *Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.*

*. . .*

**4.    Special Exclusions**

*The following provisions apply only to the specified Coverage Forms.*

**a.**    *Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form*

*We will not pay for:*

. . .

*(3) Any increase of loss caused by or resulting from:*

. . .

*(b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.*

*(4) Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".*
. . .

33.    The following provisions also appear in the Policy in form ***CAUSES OF LOSS –***

***SPECIAL FORM*** *(CP 10 30 06 07):*

**D.    Additional Coverage – Collapse**

*The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in D.1 through D.7*

*1. For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or any part of a building cannot be occupied for its intended purpose.*
 *2. We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:*
     *a. Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse.*

. . .

34.     The following provisions also appear in the Policy in form ***CAUSES OF LOSS –***

***SPECIAL FORM*** *(CP 10 30 06 07):*

### G. *Definitions*

. . .

***2.      "Specified causes of loss"*** *means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.*

35.     The following provisions appear in the Policy in form ***BUSINESS INCOME (AND***

***EXTRA EXPENSE) COVERAGE FORM*** *(CP 00 30 06 07):*

### A.      *Coverage*
### 1.      *Business Income*

*Business Income means the:*
a.   *Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and*
b.   *Continuing normal operating expenses incurred, including payroll.*
. . .
*Coverage is provided as described and limited below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:*
*(1) Business Income including "Rental Value".*
*(2) Business Income other than "Rental Value".*
*(3) "Rental Value".*

*If option (1) above is selected, the term Business Income will include "Rental Value". If option (3) above is selected, the term Business Income will mean "Rental Value" only.*

*If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each. We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must because by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.*

*We will pay for the actual loss of Business Income you sustain due to necessary "suspension" of your "operations" during the "period of restoration".    The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income*

*Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. . . .*

. . .

2. **Extra Expense**
   a. *Extra Expense coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income coverage applies at that premises.*
   b. *Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.*

   *We will pay Extra Expense (other than the expense to repair or replace property) to:*
   *(1) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.*
   *(2) Minimize the "suspension" of business if you cannot continue "operations".*
   *We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.*

   . . .

3. **Covered Causes of Loss, Exclusions and Limitations**
   *See applicable Causes of Loss Form as shown in the Declarations.*

36. The following provisions appear in the Policy in form **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM** *(CP 00 30 06 07):*

   **F. Definitions**
   . . .
   3. **"Period of restoration"** *means the period of time that:*
      a. *Begins:*
         *(1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or*
         *(2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;*
         *caused by or resulting from any Coverage Cause of Loss at the described premises; and*

      b. *Ends on the earlier of:*
         *(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality [sic]; or*
         *(2) The date when business is resumed at a new permanent location.*

. . .

37.     The following provisions also appear in the Policy in form **BUILDING AND**

**PERSONAL PROPERTY COVERAGE FORM** *(CP 00 10 06 07):*

*Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance*
. . .

### E.  Loss Conditions

. . .

### 2. Appraisal

*If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss.*

. . .

### 3. Duties In The Event Of Loss Or Damage

*a.  You must see that the following are done in the event of loss or damage to Covered Property:*

. . .

*(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.*

*(6) As often as may be reasonably required, permit us to examine the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.*

. . .

*(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.*

*(8) Cooperate with us in the investigation or settlement of the claim.*

*b.  We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.*

38.     Similarly, the **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE**

**FORM** *(CP 00 30 06 07)* provides*:*

### C.  Loss Conditions

. . .

**2. *Duties In The Event Of Loss***
    *a.  You must see that the following are done in the event of loss:*
    . . .
    *(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss.*
    . . .
    *(5) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.*
    *Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.*
    *(6) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.*
    *(7)  Cooperate with us in the investigation or settlement of the claim.*
    *(8)  If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.*

    *b.  We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.*

39.     The  following  provisions  appear  in  the  Policy  in  form  ***COMMERCIAL***

***PROPERTY CONDITIONS*** *(CP 00 90 07 1988):*

    *This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Condition and Additional Conditions in Commercial Property Coverage Forms.*

    . . .

    ***D.  LEGAL ACTION AGAINST US***

    *No one may bring a legal action against us under this Coverage Part unless:*
    *1.  There had been full compliance with all of the terms of this Coverage Part; and*
    *2.  The action is brought within 2 years after the date on which the direct physical loss or damage occurred.*

## COUNT I

## DECLARATION THAT THE POLICY'S LIMITATIONS PERIOD FOR ACTIONS AGAINST UNDERWRITERS HAS EXPIRED

40.     The plaintiffs repeat and reallege the allegations contained in paragraphs one (1) through thirty-nine (39) as if fully stated herein.

41.     An actual controversy within the jurisdiction of this court exists between the parties as to whether or not certain Underwriters at Lloyd's, London subscribing to Policy No. LPK 02377 are required to indemnify 825 Main for loss, damages, costs or expenses which 825 Main has incurred or may incur as a result of damage to the mill, including alleged loss of rental income and "defaulted credit facility," under the Policy.

42.     The Policy has a limitations period for actions against Underwriters.  Such actions must be brought within 2 years after the date on which the direct physical loss or damage occurred.

43.     The physical loss or damage occurred on or about September 16, 2011.

44.     The Limitations period expired on September 16, 2013.

45.     The claim for appraisal was not made until January 27, 2014.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.      That the Policy's Limitations period is valid, enforceable, and not against public policy.

b.      That the Policy's Limitations period expired as of September 17, 2013.

c.      That certain Underwriters at Lloyd's, London subscribing to Policy No. LPK 02247 are not required to participate in the appraisal process as it amounts to an action against the plaintiffs beyond the Limitations period.

d.      That under the Policy, certain Underwriters at Lloyd's, London subscribing to Policy No. LPK 02377 are not required to indemnify 825 Main for loss, damages, costs or expenses which

825 Main has incurred or may incur by reason of water damage and/or structural damage to a building located at 825 Main Street, West Warwick, Rhode Island, alleged to have occurred on or about September 16, 2011.

     e.     That certain Underwriters at Lloyd's, London subscribing to Policy No. LPK 02377 be awarded all other relief allowed by law or in equity which the Court deems appropriate and just.

### COUNT II

### DECLARATION THAT ALL ASPECTS OF THE LOSS ARE EXCLUDED BY "WEAR AND TEAR" / DETERIORATION EXCLUSIONS

46.     The plaintiffs repeat and reallege the allegations contained in paragraphs one (1) through forty-five (45) as if fully stated herein.

47.     An actual controversy within the jurisdiction of this court exists between the parties as to whether or not certain Underwriters at Lloyd's, London subscribing to Policy No. LPK 02377 are required to indemnify 825 Main for loss, damages, costs or expenses which 825 Main has incurred or may incur as a result of damage to the mill, including alleged loss of rental income and "defaulted credit facility," under the Policy.

48.     The Policy excludes coverage for *Wear and tear* and *Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself.*

49.     These exclusions apply to *loss or damage . . . caused directly or indirectly* by these causes *regardless of any other cause or event that contributes concurrently or in any sequence to the loss.*

50.     The primary cause of the structural damage was the poor condition of the framing prior to the sprinkler failure event.

51.     The predominant or proximate cause of the loss is not a "specified cause of loss."

52.     The "Collapse" provisions in the Policy do not create coverage for any aspect of the loss.

53.     Coverage for some or all of 825 Main's claims are excluded by "wear and tear" / deterioration exclusions.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.     That under the Policy, certain Underwriters at Lloyd's, London subscribing to Policy No. LPK 02377 are not required to indemnify 825 Main for loss, damages, costs or expenses which 825 Main has incurred or may incur by reason of water damage and/or structural damage to a building located at 825 Main Street, West Warwick, Rhode Island, alleged to have occurred on or about September 16, 2011.

b.     That certain Underwriters at Lloyd's, London subscribing to Policy No. LPK 02377 be awarded all other relief allowed by law or in equity which the Court deems appropriate and just.

## COUNT III

## DECLARATION THAT ALLEGED DAMAGES CAUSED BY THE BUILDING DEPARTMENT'S ORDER TO CEASE OPERATIONS ARE EXCLUDED BY "ORDINANCE OR LAW" EXCLUSION

54.     The plaintiffs repeat and reallege the allegations contained in paragraphs one (1) through fifty-three (53) as if fully stated herein.

55.     An actual controversy within the jurisdiction of this court exists between the parties as to whether or not certain Underwriters at Lloyd's, London subscribing to Policy No. LPK 02377 are required to indemnify 825 Main for loss, damages, costs or expenses which 825 Main has incurred or may incur as a result of damage to the mill, including alleged loss of rental income and "defaulted credit facility," under the Policy.

56.     The Policy excludes coverage for *loss or damage caused directly or indirectly by . . .*
*Regulating the construction, use or repair of any property . . . or . . .  Requiring the tearing down of*
*any property, including the cost of removing its debris.*

57.     This exclusion applies to *loss or damage . . . caused directly or indirectly* by these
causes *regardless of any other cause or event that contributes concurrently or in any sequence to*
*the loss.*

58.     The Building Department ordered that all operations to cease and desist due to:
*massive deterioration of the wood components (flooring, beams and posts) throughout the entire*
*building.  Additionally the reinforced concrete slab has spalled in many areas leaving the steel*
*reinforcement exposed and rusting. The joists, which support the original first floor wood floor, are*
*also badly deteriorated/failed as is the steel "C" channel. Also a portion of the floor collapsed in an*
*area approximately 15' x 80' on the northwest end of the building.*

59.     Coverage for some or all of 825 Main's claims are excluded by "Ordinance Or Law"
exclusion.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.      That under the Policy, certain Underwriters at Lloyd's, London subscribing to Policy
No. LPK 02377 are not required to indemnify 825 Main for loss, damages, costs or expenses which
825 Main has incurred or may incur by reason of the Building Departments order to cease and desist
operations at 825 Main Street, West Warwick, Rhode Island, following the loss alleged to have
occurred on or about September 16, 2011.

b.      That certain Underwriters at Lloyd's, London subscribing to Policy No. LPK 02377
be awarded all other relief allowed by law or in equity which the Court deems appropriate and just.

## COUNT IV

## DECLARATION THAT THERE IS NO COVERAGE FOR ANY ALLEGED LOST RENTAL INCOME

60.     The plaintiffs repeat and reallege the allegations contained in paragraphs one (1) through fifty-nine (59) as if fully stated herein.

61.     An actual controversy within the jurisdiction of this court exists between the parties as to whether or not certain Underwriters at Lloyd's, London subscribing to Policy No. LPK 02377 are required to indemnify 825 Main for loss, damages, costs or expenses which 825 Main has incurred or may incur as a result of damage to the mill, including alleged loss of rental income, under the Policy.

62.     In order for there to be coverage for any loss of rental income, the Business Income and Extra Expense Coverage Form (CP 00 30 06 07) requires the loss or damage to be caused by or result from a Covered Cause of Loss.

63.     The alleged loss in September 2011 does not involve a covered cause of loss.

64.     There is no coverage available to 825 Main for any alleged loss of rental income because of applicable and controlling language and/or exclusions or limitations contained in the Policy.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a.      That under the Policy, certain Underwriters at Lloyd's, London subscribing to Policy No. LPK 02377 are not required to indemnify 825 Main for alleged loss of rental income following events alleged to have occurred on or about September 16, 2011.

b.      That certain Underwriters' at Lloyd's, London, subscribing to Policy No. LPK 02377, duty to indemnify for alleged loss of rental income would otherwise be limited to loss from suspension of operations during the "period of restoration," as that term is defined by the Policy.

c.      That certain Underwriters at Lloyd's, London subscribing to Policy No. LPK 02377

be awarded all other relief allowed by law or in equity which the Court deems appropriate and just.

### COUNT V

### DECLARATION THAT THERE IS NO COVERAGE FOR ANY ALLEGED "DEFAULTED CREDIT FACILITY"

65.      The plaintiffs repeat and reallege the allegations contained in paragraphs one (1) through sixty-four (64) as if fully stated herein.

66.      An actual controversy within the jurisdiction of this court exists between the parties as to whether or not certain Underwriters at Lloyd's, London subscribing to Policy No. LPK 02377 are required to indemnify 825 Main for loss, damages, costs or expenses which 825 Main has incurred or may incur as a result of damage to the mill, including alleged "defaulted credit facility," under the Policy.

67.      The claim for "defaulted credit facilities" does not fall within the scope of the Business Income and Extra Expense Coverage.

68.      Further, in order for there to be coverage for any loss under the Business Income and Extra Expense Coverage Form (CP 00 30 06 07), the loss or damage must be caused by or result from a Covered Cause of Loss.

69.      The alleged loss in September 2011 does not involve a covered cause of loss.

70.      There is no coverage available to 825 Main for any alleged loss related to alleged "defaulted credit facility" because of applicable and controlling language and/or exclusions or limitations contained in the Policy.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a. That under the Policy, certain Underwriters at Lloyd's, London subscribing to Policy No. LPK 02377 are not required to indemnify 825 Main for alleged "defaulted credit facilities" following events alleged to have occurred on or about September 16, 2011.

b. That certain Underwriters at Lloyd's, London subscribing to Policy No. LPK 02377 be awarded all other relief allowed by law or in equity which the Court deems appropriate and just.

### COUNT VI

### DECLARATION THAT PLAINTIFFS ARE RELIEVED OF ANY OBLIGATIONS DUE TO 825 MAIN'S FAILURE TO COOPERATE

71. The plaintiffs repeat and reallege the allegations contained in paragraphs one (1) through seventy (70) as if fully stated herein.

72. An actual controversy within the jurisdiction of this court exists between the parties as to whether or not certain Underwriters at Lloyd's, London subscribing to Policy No. LPK 02377 are required to indemnify 825 Main for loss, damages, costs or expenses which 825 Main has incurred or may incur as a result of damage to the mill, including alleged loss of rental income and "defaulted credit facility," under the Policy.

73. As a condition to coverage, the Policy requires the policy holder to cooperate in the investigation of the claim including the provision of detailed inventories, permitting examination of the insured's books and records, and submission to examination under oath.

74. 825 Main did not reasonably cooperate with the plaintiffs' investigation of its claim.

75. The plaintiffs were prejudiced by 825 Main's lack of cooperation.

WHEREFORE, the plaintiffs, Underwriters, request a judgment declaring as follows:

a. That 825 Main failed to comply with the Duties in the Event of Loss or Damage under the Policy.

b.       That under the Policy, certain Underwriters at Lloyd's, London subscribing to Policy

No. LPK 02377 are not required to indemnify 825 Main for any alleged loss, cost or expense

associated with 825 Main's claim in connection with the events alleged to have occurred on or

about September 16, 2011.

c.       That certain Underwriters at Lloyd's, London subscribing to Policy No. LPK 02377

be awarded all other relief allowed by law or in equity which the Court deems appropriate and just.

**THE PLAINTIFFS CLAIM A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

**CERTAIN       UNDERWRITERS       AT
LLOYD'S, LONDON SUBSCRIBING TO
POLICY NO. LPK 02377,**

By Their Attorney,

Dated: February 10, 2014

**THOMAS B. FARREY, III (6457)**
Burns & Farrey
446 Main Street
Worcester, MA 01608
Tel.:    508.756.6288
EMail: farrey@burnsandfarrey.com

JPM/
(LO-134,#274)